IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 9 2013

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

WAL-MART STORES, INC.;
WAL-MART STORES EAST, L.P.; and
RETAIL TRUST III

**PLAINTIFFS**

v.     Civil Action No. _13-5067-RTD_

QUINCO SERVICES, INC.; and
QUINCO ELECTRICAL, INC.

**DEFENDANTS**

## COMPLAINT

Plaintiffs, Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., and Retail Trust III, by and through their attorneys, Kutak Rock LLP, for their complaint against Defendants, Quinco Services, Inc. and Quinco Electrical, Inc., state and allege as follows:

### PARTIES

1.     Wal-Mart Stores, Inc. ("Wal-Mart") is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Pursuant to 28 U.S.C. § 1332(c)(1), Wal-Mart is a citizen of both Delaware and Arkansas for purposes of diversity jurisdiction. Pursuant to 28 U.S.C. § 1391(c)(2), Wal-Mart is a resident of the Western District of Arkansas for purposes of venue.

2.     Wal-Mart Stores East, L.P. ("WMSE LP") is a Delaware limited partnership with its principal place of business in Bentonville, Arkansas. WMSE LP's sole general partner is WSE Management, LLC ("WSE Management"), an Arkansas limited liability company with its principal place of business in Bentonville, Arkansas. WMSE LP's sole limited partner is WSE Investment, LLC ("WSE Investment"), an Arkansas limited liability company with its principal place of business in Bentonville, Arkansas. The sole member of both WSE Management and WSE Investment is Wal-Mart Stores East, LLC ("WMSE LLC"), an Arkansas limited liability company with its principal place of business in Bentonville, Arkansas. The sole member of

- 1 -

WMSE LLC is Wal-Mart Stores, Inc.  Pursuant to *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-196, 110 S. Ct. 1015, 108 L.Ed. 2d 157 (1990), WMSE LP is a citizen of both Delaware and Arkansas for purposes of diversity jurisdiction.  Pursuant to 28 U.S.C. § 1391(c)(2), WMSE LP is a resident of the Western District of Arkansas for purposes of venue.

3.      Retail Trust III ("Retail Trust") is a Delaware statutory trust and qualified real estate investment trust (REIT) with its principal place of business in Bentonville, Arkansas.  The trustees of Retail Trust are Wilmington Trust Company, a national banking association with its principal place of business in Wilmington, Delaware and William J. Wade, a citizen of Delaware.  The beneficial owner of Retail Trust is NationsBanc Leasing & R.E. Corporation, a Delaware corporation with its principal place of business in Charlotte, North Carolina.  Pursuant to *Crews & Assoc. V. Nuveen High Yield Municipal Bond*, 783 F. Supp.2d 1066 (E.D. Ark. 2011), Retail Trust is a citizen of both Delaware and North Carolina for purposes of diversity of jurisdiction.  Pursuant to 28 U.S.C. § 1391(c)(2), Retail Trust is a resident of the Western District of Arkansas for purposes of venue.

4.      Quinco Services, Inc. ("Quinco Services") is a Florida corporation with its principal place of business in Winter Park, Florida.  Pursuant to 28 U.S.C. § 1332(c)(1), Quinco Services is a citizen of Florida for purposes of diversity jurisdiction.  Pursuant to 28 U.S.C. § 1391(c)(2) and (d) and the Master Services Agreement referred to herein below, Qunico Services is a resident of both the Eastern and Western Districts of Arkansas for purposes of venue.

5.      Quinco Electrical, Inc. ("Quinco Electrical") is a Florida corporation with its principal place of business in Winter Park, Florida.  Pursuant to 28 U.S.C. § 1332(c)(1), Quinco Electrical is a citizen of Florida for purposes of diversity jurisdiction.  Pursuant to 28 U.S.C. § 1391(c)(2) and (d) and the Master Services Agreement referred to herein below, Quinco

- 2 -

Electrical is a resident of both the Eastern and Western Districts of Arkansas for purposes of venue.

## JURISDICTION AND VENUE

6.      This civil action involves claims by Plaintiffs against Defendants to recover compensatory damages arising out of an electrical arc-flash and fire that occurred on August 29, 2011, at the Tappahannock Walmart Supercenter Store #1730, in Tappahannock, Virginia.

7.      This Court has personal jurisdiction over Quinco Services and Quinco Electrical pursuant to Ark. Code Ann. § 16-4-101 and the Masters Services Agreement referred to herein below, because Quinco Services, and Quinco Electrical as its assignee and/or delegatee, consented and submitted to the jurisdiction of the federal and state courts of Arkansas.

8.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

9.      Venue is proper pursuant to 28 U.S.C. § 1391 and the Master Services Agreement referred to herein below, because Quinco Services, and Quinco Electrical as its assignee and/or delegatee, agreed that any action, suit, or proceeding concerning the Master Services Agreement referred to herein below or work performed thereunder shall be brought only in the federal or state courts of Arkansas.

## FACTUAL ALLEGATIONS

10.      Wal-Mart, through its subsidiaries and affiliates, owns and operates retail stores, distribution centers, and other facilities throughout the country.

11.      On January 17, 2007, Wal-Mart and Quinco Services entered into a Master Services Agreement ("Agreement") which sets forth the general terms of the business relationship between the parties regarding prospective services to be performed from time to

4851-1883-9059.2

time by Quinco Services for Wal-Mart and its subsidiaries and affiliates. A copy of the Master Services Agreement is attached hereto as Exhibit "1" and incorporated by reference as though set forth fully herein.

12.     The Agreement was created, formed, and executed by Wal-Mart and Quinco Services using electronic signatures in accordance with the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 et seq., and the Uniform Electronic Transactions Act, Ark. Code Ann. § 25-32-101 et seq. An electronic record reflecting the parties' electronic signatures and agreement to conduct the transaction by electronic means is attached hereto as Exhibit "2" and incorporated by reference as though set forth fully herein.

13.     Wal-Mart and Quinco Services intended for the Agreement to serve as a comprehensive agreement, covering all matters relating to Quinco Services' provision of services to Wal-Mart and its affiliates and subsidiaries.

14.     On August 27, 2011, the Tappahannock Walmart Supercenter Store #1730, located at 1660 Tappahannock Blvd., Tappahannock, Virginia (the "Facility") experienced an electrical power outage as a result of weather conditions related to Hurricane Irene.

15.     Wal-Mart contacted Quinco Services by telephone and requested emergency mobile generator assistance services to restore power to the Facility by mobile generator ("Services").

16.     Quinco Services responded to Wal-Mart's request by dispatching one or more service technicians to the Facility to perform the Services described herein.

17.     Upon information and belief, Quinco Services assigned and/or delegated, in whole or in part, its right and/or obligation to perform the Services described herein to Quinco Electrical.

18.     Upon information and belief, the service technicians who performed, participated, or assisted in performing the Services described herein ("Service Technicians") were, at all times relevant to this action, officers, directors, authorized agents, employees, servants, and/or subcontractors of Quinco Services and/or Quinco Electrical (collectively, "Quinco"), or their subsidiaries, affiliates, successors, assigns, or transferees, and were working in the course and scope of their employment with Quinco in providing the Services described herein.

19.     Quinco and the Service Technicians performed the Services described herein pursuant to the terms of the Agreement.

20.     Quinco had the authority, right and duty to control how the Service Technicians performed the Services described herein.

21.     On August 29, 2011, while one or more of the Service Technicians attempted to attach the mobile generator to the Facility's electrical service system, electrical power was restored to the Facility by the utility company resulting in an electrical arc-flash and fire, which caused extensive damage to the Facility and its fixtures, equipment, improvements, merchandise and contents.

22.     In an effort to minimize existing damages and to prevent further damages caused by the arc-flash and fire, Wal-Mart mobilized response teams and equipment, and hired knowledgeable and qualified professionals to restore the Facility to its pre-loss condition.

23.     On September 2, 2011, Wal-Mart reopened the Facility under temporary power.

## CAUSES OF ACTION

### Count I
### Breach of Contract

24.     Plaintiffs re-allege and incorporate by reference, as though set forth fully herein, each and every allegation contained within paragraphs 1 through 23 of this Complaint.

25.     The Agreement is effective, valid, and enforceable.

- 5 -

26.     The terms of the Agreement govern the performance of the Services described herein.

27.     Quinco expressly agreed to perform the Services described herein in a professional and workmanlike manner, and to adhere to Wal-Mart's specifications and policies regarding the performance and delivery of the Services described herein.

28.     Quinco impliedly agreed to perform skillfully, carefully, diligently, and in a workmanlike manner.

29.     Quinco expressly warranted that the Service Technicians would be certified or licensed in accordance with all applicable laws.

30.     Quinco expressly agreed to comply with all applicable federal, state, and local laws, ordinances, statutes, rules, and regulations relating to the performance of the Services described herein, including without limitation, all environmental laws, or laws and regulations, such as the Occupational Safety & Health Administration (OSHA), governing the employment or safety of its workers.

31.     Quinco expressly agreed not to subcontract or delegate to any person the right or obligation to perform the Services described herein without the prior written consent of Wal-Mart.

32.     Quinco expressly agreed not to assign the Agreement or any interest therein without the prior written consent of Wal-Mart.

33.     Quinco, by and through its officers, directors, employees, servants, authorized agents and/or subcontractors, materially breached the Agreement by, among other things:

a.     Failing to perform the Services described herein in a skillful, careful, diligent, professional, and workmanlike manner;

- 6 -

b.     Failing to adhere to Wal-Mart's specifications and policies regarding the performance and delivery of the Services described herein;

c.     Failing to use certified or licensed technicians to perform the Services described herein;

d.     Failing to follow standard safety practices before working on a potentially energized electrical circuit;

e.     Failing to confirm that the upstream safety disconnecting means (i.e., the utility's pole-mounted primary fused cutouts) were opened and locked out/tagged out before disconnecting the service entrance conductors ("SECs") to eliminate any possibility of the SECs and distribution switchboard becoming re-energized if and when the utility power was restored;

f.     Failed to comply with all applicable federal, state, and local laws, ordinances, statutes, rules and regulations relating to the performance of the Services described herein, including without limitation, ANSI/NEMA PB 2.1-2007 and NFPA 70E-2009;

g.     Subcontracting and/or delegating its obligation to perform the Services described herein without the prior written consent of Wal-Mart; and

h.     Assigning the Agreement, in whole or in part, without the prior written consent of Wal-Mart.

34.     Wal-Mart fully performed its obligations under the Agreement until its performance was excused by Quinco's material breach of the Agreement.

35.     Retail Trust, at all times relevant to this action, owned the building, fixtures, equipment, and other improvements of the Facility.

36.     WMSE LP, at all times relevant to this action, operated the Facility and owned the inventory and merchandise within the Facility.

- 7 -

37.     WMSE LP and Retail Trust, as subsidiaries and affiliates of Wal-Mart, are permitted assigns and entitled to the benefit of the Agreement.

38.     Wal-Mart, WMSE LP and Retail Trust sustained damages, as more particularly described herein below, as a natural, direct, and proximate result of Quinco's material breach of the Agreement.

39.     Wal-Mart, WMSE LP and Retail Trust are entitled to recover their damages from Quinco and, pursuant to the terms of the Agreement and Ark. Code Ann. § 16-22-308, to recover their reasonable attorneys' fees, cost and expenses incurred in connection with this civil action.

**Count II**
**<u>Negligence</u>**

40.     Plaintiffs re-allege and incorporate by reference, as though set forth fully herein, each and every allegation contained within paragraphs 1 through 39 of this Complaint.

41.     Quinco and the Service Technicians, at all times relevant to this action, owed a duty to use ordinary care under the circumstances for the safety and protection of others, including Plaintiffs and their property.

42.     Quinco, by and through its subsidiaries, affiliates, successors, assigns, delegatees, officers, directors, employees, servants, authorized agents and/or subcontractors, and the Service Technicians, failed to use the ordinary care required under the circumstances when performing the Services described herein by, among other things:

i.      Failing to perform the Services described herein in a in a skillful, careful, diligent, professional, and workmanlike manner;

a.      Failing to use certified or licensed technicians to perform the Services described herein;

b.      Failing to follow standard safety practices before working on a potentially energized electrical circuit;

- 8 -

c.      Failing to confirm that the upstream safety disconnecting means (i.e., the utility's pole-mounted primary fused cutouts) were opened and locked out/tagged out before disconnecting the service entrance conductors ("SECs") to eliminate any possibility of the SECs and distribution switchboard becoming re-energized if/when the utility power was restored; and

d.      Failing to comply with all applicable federal, state, and local laws, ordinances, statutes, rules and regulations relating to the performance of its services, including without limitation, ANSI/NEMA PB 2.1-2007 and NFPA 70E-2009.

43.     Quinco and the Service Technicians, at all times relevant to this action, knew or should have known that restoring power to the Facility by mobile generator created an appreciable and foreseeable risk of harm to others, including Plaintiffs and their property.

44.     The Services described herein can be safely performed only by the exercise of special skill and care and involve a grave risk of serious harm when unskillfully or carelessly performed.

45.     Quinco is vicariously liable for the negligent acts and omissions of its subsidiaries, affiliates, successors, assigns, delegatees, officers, directors, authorized agents, employees, servants, and/or subcontractors, and the Service Technicians, and for the damages proximately caused by and that naturally and directly result from such negligent acts and omissions.

46.     Wal-Mart, WMSE LP, and Retail Trust sustained damages, as more particularly described herein below, as a natural, direct and proximate result of the negligent acts and omissions described herein.

47.     Wal-Mart, WMSE LP, and Retail Trust are entitled to recover their damages from Quinco and, pursuant to the terms of the Agreement and Ark. Code Ann. § 16-22-308, to recover their reasonable attorneys' fees, cost and expenses incurred in connection with this civil action.

- 9 -

**Count III**
**Negligent Hiring, Training and Supervision**

48.     Plaintiffs re-allege and incorporate by reference, as though set forth fully herein, each and every allegation contained within the paragraphs 1 through 47 of this Complaint.

49.     Quinco, at all times relevant to this action, owed a duty to use ordinary care under the circumstances to properly and adequately hire, train and supervise its subsidiaries, affiliates, successors, assigns, delegatees, officers, directors, authorized agents, employees, servants, and/or subcontractors, and the Service Technicians, regarding the performance of the Services described herein.

50.     Quinco, at all times relevant to this action, knew or should have known that failing to properly and adequately hire, train, and supervise its subsidiaries, affiliates, successors, assigns, delegatees, officers, directors, authorized agents, employees, servants, and/or subcontractors, and the Service Technicians, regarding the performance of the Services described herein created an appreciable and foreseeable risk of harm to others, including Plaintiffs and their property.

51.     Quinco, acting by and through its subsidiaries, affiliates, successors, assigns, delegatees, officers, directors, authorized agents, employees, servants, and/or subcontractors, failed to use the ordinary care required under the circumstances when hiring, training and supervising its subsidiaries, affiliates, successors, assigns, delegatees, officers, directors, authorized agents, employees, servants, and/or subcontractors, and the Service Technicians, regarding the performance of the Services described herein by, among other things:

a.     Hiring and allowing the Service Technicians to provide the Services described herein when Quinco knew or should have known that the Service Technicians were not competent, certified, qualified or safety-conscious;

- 10 -

b.    Failing to exercise due diligence in ascertaining whether the Service Technicians were competent, certified, licensed, qualified and safety conscious before hiring and allowing them to perform the Services described herein;

c.    Failing to train and supervise the Service Technicians to ensure they followed standard safety practices before working on a potentially energized electrical circuit;

d.    Failing to train and supervise the Service Technicians to confirm that the upstream safety disconnecting means (i.e., the utility's pole-mounted primary fused cutouts) were opened and locked out/tagged out before disconnecting the service entrance conductors ("SECs") to eliminate any possibility of the SECs and distribution switchboard becoming re-energized if/when the utility power was restored; and

e.    Failing to train and supervise the Service Technicians to ensure they complied with all applicable federal, state, and local laws, ordinances, statutes, rules and regulations relating to the performance of its services, including without limitation, ANSI/NEMA PB 2.1-2007 and NFPA 70E-2009.

52.    Quinco Services and Quinco Electrical are independently liable for their own negligent acts and omissions described herein, and for the damages proximately caused by and that naturally and directly result from such negligent acts and omissions.

53.    Wal-Mart, WMSE LP, and Retail Trust sustained damages, as more particularly described herein below, as a natural, direct and proximate result of the negligent acts and omissions described herein.

54.    Wal-Mart, WMSE LP, and Retail Trust are entitled to recover their damages from Quinco and, pursuant to the terms of the Agreement and Ark. Code Ann. § 16-22-308, to recover their reasonable attorneys' fees, cost and expenses incurred in connection with this civil action.

### DAMAGES

55.    Plaintiffs re-allege and incorporate by reference, as though set forth fully herein, each and every allegation contained within the paragraphs 1 through 54 of this Complaint.

56.    Wal-Mart, WMSE LP, and Retail Trust sustained damages as a natural, direct and proximate result of the breach of contract and negligent acts and omissions described hereinabove, including without limitation, the reasonable and necessary cost of mobilizing response teams and equipment; providing temporary power, lighting, and electrical equipment; and replacing damaged merchandise, inventory, flooring, and components of the Facility's electrical system and other systems; and the reasonable and necessary cost of remediation and repairs required to restore the facility to its pre-loss condition; loss of use; and lost profits.

57.    Wal-Mart, WMSE LP, and Retail Trust each seek to recover compensatory damages in an amount in excess of seventy-five thousand dollars ($75,000), exclusive of costs and interests.

58.    Wal-Mart, WMSE LP, and Retail Trust also seek to recover their reasonable attorneys' fees, cost and expenses incurred in connection with this civil action pursuant to the terms of the Agreement and Ark. Code Ann. § 16-22-308.

### JURY TRIAL DEMAND

59.    Plaintiffs demand a jury trial on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### RESERVATION OF RIGHTS

60.    Plaintiffs specifically reserve the right to bring additional causes of action against Quinco, to amend this Complaint, and to file any other pleading that they may deem necessary and proper.

4851-1883-9059.2

WHEREFORE, Plaintiffs, Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., and Retail Trust III, pray for judgment in their favor against Defendants, Quinco Services, Inc. and Quinco Electrical, Inc., for compensatory damages in excess of $75,000, exclusive of interests and costs; for pre-judgment and post-judgment interest as may be allowed by law; for their reasonable attorneys' fees, cost and expenses, pursuant to the terms of the Agreement and Ark. Code Ann. § 16-22-308; and for any other and further relief to which they may be entitled or which may be just and proper, whether specifically prayed for herein or not.

Dated this 29th day of March, 2013.

Respectfully submitted,

KUTAK ROCK LLP

By:_____
    Russell C. Atchley, AR 82007
    John G. Trice, AR 93145
    Max Deitchler,  AR 2012200
    234 East Millsap Road, Suite 400
    Fayetteville, AR  72703-4099
    Telephone: (479) 973-4200
    Facsimile: (479) 973-0007
    russell.atchley@kutakrock.com
    john.trice@kutakrock.com
    max.deitchler@kutakrock.com

    *ATTORNEYS FOR PLAINTIFFS,*
    *WAL-MART STORES, INC., WAL-MART STORES*
    *EAST, L.P., AND RETAIL TRUST III*

- 13 -

4851-1883-9059.2